## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIN SPENCER and NICKOLE GONZALEZ, individually and on behalf of all others similarly situated,<br><br><div align="center">Plaintiffs,</div><br><br><div align="center">v.</div><br><br>KNIX WEAR INC., KNIX WEAR LLC, KNIX WEAR CALIFORNIA LLC, KNIX WEAR US, INC., and KNIX SAN DIEGO UTC, LLC,<br><br><div align="center">Defendants,</div> | **CLASS ACTION COMPLAINT**<br>**JURY TRIAL DEMANDED**<br><br>**[FOR PURPOSES OF SETTLEMENT]** |

Plaintiffs Erin Spencer and Nickole Gonzalez (collectively, "Plaintiffs") bring this Class Action Complaint against Knix Wear Inc., Knix Wear LLC, Knix Wear California LLC, Knix Wear US, Inc., and Knix San Diego UTC, LLC, (collectively, "Defendants" or "Knix"), individually and on behalf of all others similarly situated, and complain and allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE CASE

1.      This is a civil class action brought by Plaintiffs on behalf of consumers who purchased Defendants' reusable feminine hygiene underwear and apparel (the "Underwear[1]"), which are used to manage menstruation by collecting and/or absorbing menstrual fluid.

---

[1] This action concerns all styles of Knix leakproof and super leakproof underwear; KnixTeen leakproof and super leakproof underwear; and KnixTeen leakproof tights, leakproof swim, and reusable pads.

2.      Knix designs, formulates, manufactures, markets, advertises, distributes, and sells women's apparel, including the Underwear, which is an alternative to traditional disposable menstrual products such as pads and tampons.

3.      Reusable feminine hygiene products, like Knix's Underwear, are expected to be the fastest growing segment of the feminine hygiene products industry during the next decade.[2] The global period underwear market is projected to reach $279.3 million by the end of 2026.[3]

4.      As part of its efforts to attract customers in this market, Knix's marketing has included a campaign targeted at consumers seeking safe and environmentally sustainable menstrual products.

5.      Starting in January 2020, in certain of its marketing, advertising, and promotional materials, Knix represented that its Underwear is "sustainable," "PFAS free," "fluorine free," and "tested and cleared for harmful substances."[4]

6.      Knix has acknowledged that the safety and sustainability of the fabrics used in period underwear are a material concern to consumers that use these products, stating that "[c]onsumers are understandably worried.  There's just not enough transparency about materials or chemicals in period underwear."[5]

7.      Knix represented to consumers that its "PFAS-free" representations were based on independent testing by third-party labs posted on Knix's website that allegedly did not detect the presence of PFAS or organic fluorine in the tested products, but that testing was only as good as the detection limits used by the labs, and was not sufficient to support a marketing claim that the Underwear are 100% free of PFAS, fluorine or other toxic chemicals.

8.      In fact, Plaintiffs' independent testing has shown that certain samples of the Underwear contained PFAS chemicals in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs.

9.      The detection of PFAS chemicals in certain samples of the Underwear contradicted Knix's representations that its products are free of toxic chemicals PFAS, and fluorine.

---

[2] *Id.*
[3] https://www.prnewswire.com/news-releases/period-panties-market-to-grow-at-17-2-due-to-growing-awareness-about-functional-advantages-of-period-panties--tmr-insights-301339550.html (last accessed October 12, 2022)
[4] *See, e.g.,* https://knix.com/collections/sustainability (Last accessed October 12, 2022)
[5] *Id.*

10.     Had Knix not represented that its Underwear was 100% PFAS-free, Plaintiffs and Class Members would not have purchased the Underwear at all, or they would not have paid the price they did.

11.     As a result of Knix's misrepresentations, Plaintiffs and putative Class Members have suffered injury in fact, including economic damages.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367 because this is a class action in which the matter or controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and in which some Members of the proposed Class are citizens of a state different from Defendants' state.

13.     This Court has personal jurisdiction over Defendants because they transact business in the United States, including in this District, have substantial aggregate contacts with the United States, including in this District, engaged in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect throughout the United States, and purposely availed themselves of the laws of the United States and the State of New York, and further, because Plaintiff Erin Spencer lives and purchased the Underwear in this District.

14.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because this District is where a substantial part of the conduct giving rise to Plaintiffs' claims occurred, where Defendants transact business, and where Plaintiff Erin Spencer purchased the Underwear.

## PARTIES

15.     Plaintiff Erin Spencer is a citizen of New York residing in Bronx, New York.

16.     Plaintiff Nickole Gonazlez is a citizen of Missouri residing in Kansas City, Missouri.

17.     Defendant Knix Wear Inc. ("Knix Inc.") is incorporated in Toronto, Ontario, Canada. A significant portion of Knix's sales took place in New York, and in this District.

18.     Defendant Knix Wear California LLC ("Knix California") is incorporated in Delaware and is registered as a Foreign Limited Liability Corporation in California.  Defendant Knix California identifies its California office location as 2929 Main Street, Santa Monica, California.

19.     Defendant Knix Wear US, Inc. ("Knix US Inc.") is incorporated in Delaware and is registered as a Foreign Limited Liability Corporation in California.

20.     Defendant Knix Wear LLC. ("Knix US LLC") is incorporated in Delaware and is registered as a Foreign Limited Liability Corporation in California.

21.     Defendant Knix San Diego UTC, LLC ("Knix San Diego") is incorporated in Delaware.

## FACTUAL ALLEGATIONS

*Background*

22.     In recent years there has been increasing concern from women about the presence of chemicals in menstrual products and how these chemicals might affect long-term health.[6] These concerns arise, in part, from the fact that the vagina and vulva absorb chemicals at a higher rate than other areas of the body.[7] As a result, consumers have begun to demand eco-friendly, natural, and chemical-free methods of managing menstruation.

23.     Industry research shows that increased demand for alternative feminine hygiene products is primarily driven by young women who are concerned about the health and environmental impact of traditional disposable period products.[8] Period underwear is one purported solution.

24.     Period underwear is designed to replace single-use menstrual products. It is an absorbent underwear, which is worn like conventional underwear, that collects and/or absorbs menstrual fluid. Period underwear can be laundered by consumers and reused over the course of months or years, eliminating the need for single-use menstrual products.

25.     Globally, research shows that consumers are adopting a more sustainable[9] lifestyle. Since 2020, there has been a radical increase in consumer desire for sustainable and environmentally-friendly brands, with shoppers doing more research than ever to find sustainable

---

[6] *See* https://www.theguardian.com/commentisfree/2015/apr/20/tampon-safety-research-legislation (Last accessed October 12, 2022)
[7] *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3948026/
[8] https://www.nonwovens-industry.com/issues/2019-11/view_features/feminine-hygiene-manufacturers-shift-focus/ (Last accessed October 12, 2022)
[9] Sustainability generally refers to a concern for how the use of resources will impact the environmental, social, and economic health of future generations. *See* https://www.sustain.ucla.edu/what-is-sustainability/ (Last accessed October 12, 2022)

options. Studies show that when evaluating sustainability, consumers now consider company values and manufacturing and supply chain practices in their purchasing decisions.[10]

26.     In 2018, across all industries, the sale of products that were marketed as sustainable grew 5.6 times faster than those that were not.[11] The shift from disposable plastic and paper products to more sustainable feminine hygiene products mirrors global market trends.

27.     Avoiding single-use plastics[12], like those in pads and tampons, is one of the most common ways consumers engage with adopting a more sustainable lifestyle.

28.     This is borne out in research conducted by the sustainability marketing firm Shelton Group, which indicates that nearly 40% of women aged 18–34 have switched or are considering switching to reusable products to manage their periods.[13]

29.     Knix is one of the most prominent and well-known manufacturers of period underwear sold in the United States. When Knix launched its products in 2013, it was one of only three brands on the market, and it has retained a significant market share within the period underwear industry with $100 million in global sales in 2021.[14]

30.     Knix was created with the mission of providing "sustainable solutions," which support both people and the planet. In its own words, Knix defines its mission as follows[15]:

---

[10] https://www.forbes.com/sites/forrester/2021/01/21/empowered-consumers-call-for-sustainability-transformation/?sh=75af61472042 (Last accessed October 12, 2022)
[11] https://hbr.org/2019/06/research-actually-consumers-do-buy-sustainable-products (Last accessed October 12, 2022)
[12] https://www2.deloitte.com/uk/en/pages/consumer-business/articles/sustainable-consumer.html (Last accessed October 12, 2022)
[13] *Id*.
[14] https://www.nonwovens-industry.com/contents/view_breaking-news/2022-07-08/essity-to-acquire-80-stake-in-knix/
[15] https://knix.com/collections/sustainability (Last accessed October 12, 2022)

# Mission:

At Knix, we're committed to supporting our beautiful community. And that doesn't just include the people within it. It also includes the planet that we live on, grow and learn from everyday. By taking steps to rethink production, transportation and consumption, our aim is to reduce our environmental impact, all while empowering people to make their own meaningful changes too.

We're taking the approach of *progress over perfection.* While working hard to find sustainable solutions, we also believe that making progress is better than waiting for perfection.

31.    Knix's advertising campaigns have addressed sensitive topics such as miscarriage and fertility in an effort to cultivate a sense of openness and honesty around the brand and its products.[16]

32.    Knix sells almost all of its Underwear direct-to-consumer through its websites, ensuring that nearly every customer will interact with Knix's websites at some point prior to their purchase.

***PFAS Chemicals***

33.    PFAS are a category of highly persistent and potentially harmful man-made chemicals.[17]

34.    PFAS chemicals are sometimes called "forever chemicals" and some have been associated with numerous negative health effects and detrimental environmental consequences.

35.    While there are thousands of varieties of PFAS chemicals in existence, they are all categorized as either "long-chain" or "short-chain" based on the amount of carbon atoms they contain. Long-chain PFAS chemicals contain more than 8 carbon atoms, while any PFAS

---

[16] *Id.*
[17] *PFAS Explained*, EPA, https://www.epa.gov/pfas/pfas-explained (Last accessed October 12, 2022)

chemicals containing less than 8 carbon atoms are considered short-chain. Long-chain PFAS chemicals, including PFOA and PFOS, have been phased out of use in the United States and Europe due to their well-documented toxicity to humans and the environment. However, both long-chain and short-chain types of PFAS contain carbon-fluorine bonds—one of the strongest bonds in nature—which makes them highly persistent in human bodies and the environment.[18]

36.     PFAS are considered bioaccumulative, meaning they build up in the body over time.

37.     Knix has recognized the importance of the issue of the potential presence of PFAS in menstrual underwear on its website.[19]

***Plaintiffs' PFAS Testing***

38.     Plaintiffs sought independent third-party testing to determine whether Knix's Underwear contained any PFAS chemicals.

39.     Plaintiffs' testing revealed that certain samples of the Underwear contained certain PFAS in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs.

***Knix's Material Misrepresentations***

40.     Knix created the Underwear with the stated mission "to be a safe and sustainable alternative to your usual single-use pad and tampon monthly routine."[20]

41.     Given the relative novelty of period underwear, Knix relies heavily on its websites and social media channels to educate consumers about its Underwear. To that end, Knix authors and publishes a wide variety of blogs, articles, social media posts and other representations which included statements that the Underwear are 100% free of PFAS, fluorine and toxic chemicals.

---

[18]  *Per- and Polyfluoroalkyl Substances (PFAS)*, NATIONAL TOXICOLOGY PROGRAM, https://ntp.niehs.nih.gov/whatwestudy/topics/pfas/index.html (Last accessed February 22, 2022)
[19]  https://knix.com/blogs/knix-blog/yes-knix-underwear-are-toxic-chemical-free (Last accessed October 12, 2022); *https://www.knixteen.com/pages/sustainability* (Last accessed October 12, 2022)
[20]  https://knix.com/collections/sustainability (Last accessed October 12, 2022)

42.     In addition to its original Underwear, in 2017, Knix launched a teen-focused version of its product under the brand name "Knixteen." Based on information and belief, the Knixteen-branded version of the Underwear is substantially similar to all other versions of the Underwear and is created, designed, and manufactured in a substantially similar, if not identical, way as the original Knix Underwear.

43.     On January 21, 2020, Knix published the following post to its more than 400,000 followers on Instagram.[21] The post garnered more than 1700 "likes," along with numerous comments from consumers praising Knix and vowing to discard the competitor's product:

---

[21] https://www.instagram.com/p/B7l_ChCAAsG/?utm_medium=copy_link
(Last accessed October 12, 2022)

knix ✔



♡  ○  ◁                                          🔖

**1,703 likes**

**knix** That's right, we are happy to report that Knix
products are PFAS free.
The thing that we're most proud of at Knix is that
women trust us with their bodies. They trust us to
photograph them, they trust us to share their stories,
and above all— they trust us to make intimates that are
safe, non-toxic and chemical free.
Last week, a necessary spotlight was cast towards
exactly what goes into making period underwear. What
makes them leakproof? What materials are used? Are
these fabrics safe? What exactly am I putting near my
vagina?
At Knix, we put a lot of care into crafting great products
and a lot of thought towards creating underwear that's
both safe and effective. That means avoiding stain
repellents and fabric treatments. That means no
harmful chemicals, that means no PFAS.
We're desperately calling for more transparency and
stricter regulations in the intimates industry. Are you
with us? Click the link in our bio to learn more and to
sign our change.org petition to get on board and show
your support for safer periods tomorrow.
#knix #pfas

44.     Knix also published the following posts to its Instagram "Stories" on or around January 21, 2020. These types of Instagram posts generally expire after 24 hours, however, Knix saved them as a "highlight" on the brand's Instagram page, which means that consumers can continue to view and interact with the posts:

**Complete Transparency**

We've updated all the information on our website to ensure more transparency around the patented technology in our products.



**So what is Knix doing to help growing concern about toxic chemicals in your intimates?**

**Here's what:**

## Yes. Knix underwear are toxic chemical free.

## Thorough Testing

We had a globally-renowned independent lab test our Leakproof Underwear, and we are happy to report that **Knix products are 100% PFAS free** and free from other chemical treatments.

For more info, swipe up!

## Taking A Stand

As a leader in Leakproof Underwear, **we believe it's time for change.** So we've launched a change.org petition to push for more regulation and standards in our industry.

Please swipe up to show your support!

PFAS Chemical free ✓
OEKO-TEX® certified ✓
Totally safe ✓

**Swipe Up**

45.   In or around January 2020, Knix also added representations to its websites, including on the product purchase page for each style of the Underwear it sells, stating that the product is "free from PFAS and other toxic chemicals," or alternatively, "free from PFAS and free of chemical treatments."



46.   Beyond the specific product listings, Knix also made numerous other representations on its webpage that all Knix products are PFAS free. On a its webpage titled "Sustainability at Knix," the following representation appears:

### Certifications

All Knix products are PFAS free. All of the main fabrics used in our bras and underwear are also OEKO-TEX® certified— meaning they've been tested and cleared for harmful substances. For more details about manufacturing and to read copies of the reports, check out our blog below.

**OEKO-TEX®**      **Blog**

47.     Knix made further representations on its blog, which is linked to its "Sustainability at Knix" page.[22]:

# Yes. Knix Underwear are Toxic Chemical Free

The thing that we're most proud of at Knix is that people trust us with their bodies. They trust us to photograph them, they trust us to share their stories, and above all— they trust us to make intimates that are safe, non-toxic and chemical free.

Recently, a necessary spotlight was cast towards exactly what goes into making period underwear. What makes them leakproof? What materials are used? Are these fabrics safe? In short: *What exactly am I putting near my vagina?*

# What are PFAS?

PFAS (polyfluoroalkyl substances) are a large family of synthetic chemicals that are commonly used as a stain or water repellent. The two most common are **PFOA** (perfluorooctanoic acid) and **PFOS** (perfluorooctane sulfonate). You might have heard about them in the news lately, as **recent studies** have revealed them to have negative effects on your health and the environment. They're harmful because they can't be broken down — **which could be especially dangerous if they're added to underwear,** coming in direct contact with an extra sensitive area of your body.

At Knix, we put a lot of care into crafting great products and a lot of thought towards creating underwear that's both safe *and* effective. We've been intentional about avoiding stain repellents and fabric treatments (these same repellents are often used on carpets or industrial machines— yikes!). For starters, our Leakproof Underwear materials and technology are manufactured in Italy. Not only are they manufactured here because of the higher quality, but also because **the European Union has a substance restriction on toxic PFAS chemicals.**

48.     Knix made a variety of other representations regarding the chemical- and PFAS-free nature of its Underwear throughout its websites, including the following:

 a.   "free of chemical and PFAS— keeping you dry, secure, and most importantly, safe"[23]

---

[22] https://knix.com/blogs/knix-blog/yes-knix-underwear-are-toxic-chemical-free (Last accessed October 12, 2022)
[23] https://knix.com/blogs/knix-blog/how-to-have-a-plastic-free-period?_pos=5&_sid=9571b689b&_ss=r  (Last accessed October 12, 2022)

b.  "… free from PFAS and other chemical treatments…Talk about having a healthy period!"[24]

c. "the patented technology built into The Underwear is 100% free from PFAS"[25]

d. "there is no Fluorine in our Leakproof Underwear"[26]

e. That it tested for chemicals like PFOA, "which our Leakproof Underwear were cleared for."[27]

f. "all our undies are PFAS and chemical free"[28]

g. "…our Leakproof Underwear materials and technology are manufactured in Italy. Not only are they manufactured here because of the higher quality, but also because the European Union has a substance restriction on toxic PFAS chemicals."[29]

h. "At Knix, we put a lot of care into crafting great products and a lot of thought towards creating underwear that's both safe and effective. We've been intentional about avoiding stain repellents and fabric treatments (these same repellents are often used on carpets or industrial machines— yikes!)."[30]

49.    According to Knix, it made these representations based on testing it conducted through independent labs using a less-sensitive detection limit than the testing Plaintiffs conducted. Defendants knew, or should have known, that their testing was insufficient to support any claims that the Underwear was or is 100% PFAS free. In an industry that now has dozens of alternative period product brands, Knix has pursued a pervasive marketing campaign to cultivate its image as an industry leader purportedly committed to providing consumers with menstrual products that are 100% free of PFAS, fluorine and toxic chemicals. However, Defendants' failure to use more

---

[24] https://knix.com/blogs/knix-blog/5-things-you-should-know-about-your-period?_pos=6&_sid=9571b689b&_ss=r (Last accessed February 22, 2022)
[25] https://knix.com/blogs/resources/menstrual-hygiene-what-you-need-to-know?_pos=7&_sid=9571b689b&_ss=r; https://knix.com/blogs/knix-blog/nude-intimates-that-celebrate-you?_pos=2&_sid=9571b689b&_ss=r>; https://knix.com/blogs/resources/how-does-period-underwear-work?_pos=3&_sid=9571b689b&_ss=r> (Last accessed February 22, 2022)
[26] https://knix.com/blogs/knix-blog/yes-knix-underwear-are-toxic-chemical-free (Last accessed October 12, 2022)
[27] Id.
[28] https://knix.com/blogs/knix-blog/the-benefits-of-cotton-underwear?_pos=4&_sid=9571b689b&_ss=r (Last accessed February 22, 2022)
[29] https://knix.com/blogs/knix-blog/yes-knix-underwear-are-toxic-chemical-free(Last accessed October 12, 2022)
[30] Id.

sensitive testing ultimately misled Plaintiffs who reasonably believed that the Underwear was completely free from PFAS.

50.     Knix further represented on its websites and social media sites that the fabric or technology used in the Underwear is OEKO-TEX® certified.[31]

51.     OEKO-TEX® is an international association for research and testing in the field of textile and leather ecology. OEKO-TEX® certification indicates that a product has been tested for harmful substances and that the results meet safety standards set by the association. OEKO-TEX® offers several types of textile certifications. For example, STANDARD 100 by OEKO-TEX® tests for harmful substances and is issued if products are determined to be safe from a human-ecological perspective.

52.     Notably, Knix has not disclosed which OEKO-TEX® certification its fabrics putatively obtained, nor does Knix specifically identify the fabrics which are allegedly certified.

53.     Moreover, a search of the OEKO-TEX® Buying Guide, which identifies products that have been certified by OEKO-TEX® at various stages of along the textile chain failed to identify a certification for Knix at any stage of production.[32]

54.     Because the various OEKO-TEX® certifications address PFAS chemicals in textiles, representing that a product's fabrics are OEKO-TEX® certified could lead customers to believe that the product is free of PFAS.

***Plaintiff Erin Spencer's Facts***

55.     In November 2021, Plaintiff Spencer purchased the Underwear from Knix's official website: www.knix.com.

56.     Ms. Spencer first learned about the Underwear through Knix's online advertising, which appeared on various websites and social media platforms she visited.

57.     At the time of her purchase, Ms. Spencer wanted to purchase a safe, sustainable alternative feminine hygiene product that did not contain harmful chemicals. She relied on Defendants' factual representations about their Underwear in their online advertising and

---

[31] https://knix.com/blogs/knix-blog/leakproof-underwear-for-every-day-of-yourcycle?_pos=7&_sid=cc725b093&_ss=r (Last accessed February 22, 2022)

[32] https://www.oeko-tex.com/en/buying-guide (Last accessed October 12, 2022)

marketing materials. These representations all indicated that the Underwear were PFAS free and Fluorine free. Ms. Spencer relied upon these representations when she purchased the Underwear.

58.     As a direct and intended result of Knix's advertising and marketing, Ms. Spencer purchased multiple styles of the Underwear, including Knix Super Leakproof High Rise, Cotton Modal Super Leakproof High Rise, and the Super Leakproof Dream Short, which she used according to these products' specifications.

59.     In or around November of 2022, Ms. Spencer learned that testing had been performed on the Underwear and that samples of the Underwear tested positive for PFAS.

60.     When Ms. Spencer learned that the Defendants' express representations about the Underwear were misleading and false, she stopped purchasing the Underwear.

61.     Ms. Spencer did not receive the benefit of her bargain when she purchased the Underwear that failed to conform to Knix's express and material representations that their Underwear were sustainable, toxic chemical free and PFAS free. Had she been aware of the misrepresentations and false statements, she would have either not purchased the Underwear or paid substantially less for the Underwear.

***Plaintiff Nickole Gonzalez's Facts***

62.     In 2021, Plaintiff Gonzalez purchased the Underwear from Knix's official website: www.knix.com.

63.     Ms. Gonzalez first learned about the Underwear through Knix's online advertising, which appeared on various websites and social media platforms she visited.

64.     At the time of her purchase, Ms. Gonzalez had recently had a child and wanted to purchase a safe alternative feminine hygiene product that did not contain harmful chemicals. She relied on Defendants' factual representations about the Underwear in their online advertising and marketing materials. These representations all indicated that the Underwear were PFAS free and Fluorine free. Ms. Gonzalez relied upon these representations when she purchased the Underwear.

65.     As a direct and intended result of Knix's advertising and marketing, Ms. Gonzalez purchased multiple styles of the Underwear, including Knix CoreLove High Rise, Super Leakproof Brief and the Dream Boy Short, which she used according to these products' specifications.

66.     In or around November of 2021, Ms. Gonzalez became aware of reports, including information published on Facebook, that samples of the Underwear had tested positive for PFAS.

67.     When Plaintiff Gonzalez learned that the Defendants' express representations about the Underwear were misleading and false, she stopped purchasing the Underwear.

68.     Ms. Gonzalez did not receive the benefit of her bargain when she purchased the Underwear that failed to conform to Knix's express and material representations that the Underwear were sustainable, toxic chemical free and PFAS free, by containing PFAS chemicals that did not conform to the representations and to the warranties made by Knix. Had she been aware of the misrepresentations and false statements, she would have either not purchased the Underwear or paid substantially less for the Underwear.

***Knix's Misrepresentations and Omissions are Material to Reasonable Consumers***

69.     Knix's Underwear is a niche product that is marketed, advertised, and otherwise directed to consumers who are hoping to purchase a safe, sustainable alternative to other female hygiene products.

70.     Further, after the discovery of PFAS chemicals in competing brands of period underwear as described herein, Defendants were aware that consumers considered the presence of these chemicals concerning and material to their purchasing decisions.

71.     The representations made by Defendants are designed to differentiate Knix from its competitors and drive consumer sales by uniformly representing to customers that their Underwear are free from PFAS and other toxic chemicals, and otherwise sustainable.

72.     As described above, Plaintiffs' independent testing from a third-party lab found PFAS chemicals in certain samples of the Underwear in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs. Plaintiffs' test results contradict all of Knix's representations that its Underwear is "100% PFAS free," "100% toxic chemical free" and sustainable. Each of these representations are important to reasonable consumers, such as Plaintiffs and Class Members, when purchasing the Underwear.

73.     As a direct and proximate result of Defendants' advertising, marketing, and public statements, consumers, including Plaintiffs, purchased the Underwear for their personal use.

74.     Consumers pay the price they do—and Plaintiffs paid the price they did—because they reasonably believe that the Underwear, which is represented as PFAS- and toxic chemical-free, will not contain any level of PFAS chemicals.

75.     As alleged herein, Plaintiffs and Class Members did not receive the full benefit of their bargain. They paid for the Underwear that was promised to be "100% PFAS free," but the Underwear they received may contain PFAS in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs.

76.     At all relevant times, Defendants should have known that in marketing the Underwear as 100% PFAS free, consumers would not expect that the Underwear may contain PFAS at any level. Defendants nevertheless marketed, advertised and sold the Underwear without disclosing this material information.

77.     No reasonable consumer would expect that a product explicitly marketed as PFAS-free may contain any level of PFAS.

78.     As a direct and proximate result of Defendants' misrepresentations, Plaintiffs and other similarly situated consumers purchased and used the Underwear.

79.     If Defendants had disclosed to Plaintiffs and putative Class Members that its Period Underwear may contain harmful PFAS chemicals, Plaintiffs and putative Class Members would not have purchased Knix's Underwear or they would have paid less for this product.

80.     Plaintiffs and each of the Class Members have been damaged and suffered an injury in fact caused by Defendants' unfair, deceptive, and misleading practices, as set forth herein, and seek compensatory damages and such other and further relief as this Court deems just and proper.

81.     This case does not involve any claims of personal injury or safety issues, and Plaintiffs do not allege that they have suffered or seek redress for any personal injuries or future physical harm as a result of purchasing the Underwear. This case involves claims based on Knix's marketing of its products as "100% free" of PFAS, fluorine and other toxic chemicals.

82.     On February 23, 2022 Plaintiffs' counsel sent notice via Certified U.S. Mail to Defendant Knix Wear US, Inc. and Defendant Knix Wear, Inc. on behalf of certain individuals and consumers who purchased Defendants' Underwear. The letter notified Defendants of the claims and allegations set forth herein.

### INJURY TO THE PUBLIC AT-LARGE AND POTENTIAL FOR FUTURE HARM

83.     Defendants' alleged wrongful conduct harms the public-at-large.

84.     PFAS, also known as "forever chemicals," are a category of highly persistent and potentially harmful man-made chemicals that have been associated with numerous negative health effects for humans and harmful environmental impacts.

85.     Here, certain samples of the Underwear contained PFAS in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs. Long-chain PFAS are well known to negatively impact the human body and the environment at certain levels under certain circumstances.

## FED. R. CIV. P. 9(b) ALLEGATIONS
### (Affirmative and By Omission)

86.     Although Defendants are in the best position to know what content they placed on their website(s), social media sites, and in marketing materials during the relevant timeframe, and the knowledge that they had regarding the PFAS, to the extent necessary, Plaintiffs satisfy the requirements of Rule 9(b) by alleging the following facts with particularity:

87.     **WHO**: Defendants made material misrepresentations and/or omissions of fact on their websites, social media sites and in public statements, which include the statements that the Underwear were and are PFAS and toxic chemical free, despite the fact that Defendants lacked sufficient support for these statements.

88.     **WHAT**: Defendants represented that the Underwear were and are PFAS and toxic chemical free. Thus, Defendants' conduct deceived Plaintiffs and Class Members into believing that the Underwear were manufactured and sold with such qualities, when Defendants should have known that the independent third-party testing on which they based these representations was insufficient to support such a claim. Defendants knew or should have known this information is material to reasonable consumers, including Plaintiffs and Class Members in making their purchasing decisions, yet it continued to pervasively market the Underwear as possessing qualities it does not.

89.     **WHEN**: Defendants made material misrepresentations, false statements and/or omissions during the putative Class period and at the time Plaintiffs and Class Members purchased the Underwear, and continuously throughout the applicable Class period.

90.     **WHERE**: Defendants' marketing message was uniform and pervasive, carried through material misrepresentations, false statements and/or omissions on its website(s), including its sustainability and ethically sourced webpages, as well as on its social media pages and in public comments.

91. **HOW**: Defendants made material misrepresentations, false statements and/or omissions regarding the presence of PFAS and toxic chemicals in the Underwear and their character despite the fact that they should have known that the products could contain PFAS in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs.

92. **WHY**: Defendants made the material misrepresentations, false statements, and/or omissions detailed herein for the express purpose of inducing Plaintiffs, Class Members, and all reasonable consumers to purchase and/or pay for the Underwear over other brands that did not make similar representations, the effect of which was that Defendants profited by selling the Underwear to many thousands of consumers.

93. **INJURY**: Plaintiffs and Class Members purchased, paid a premium, or otherwise paid more for the Underwear when they otherwise would not have, absent Defendants' misrepresentations, false statements and/or omissions.

## CLASS ACTION ALLEGATIONS

94. Plaintiffs bring this action individually and as representative of all those similarly situated, pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the members of the following class ("Nationwide Class"):

> **During the fullest period allowed by law, all persons in the United States who purchased the Underwear.**

95. Specifically excluded from these definitions are: (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel. Plaintiffs reserve the right to amend the Class definition as necessary.

96. Numerosity: The Members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class Members is presently unknown, it likely consists of at least thousands of people throughout California. The number of Class Members can be determined by sales information and other records. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The Class is readily identifiable from information and records in the possession of Defendants.

97.    <u>Typicality</u>: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased the Underwear that were designed, manufactured, marketed, advertised, distributed, and sold by Defendants. Plaintiffs, like all Class Members, have been damaged by Defendants' misconduct in that, *inter alia*, they have incurred or will continue to incur damage as a result of overpaying for a product that may contain PFAS chemicals in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs. Furthermore, the factual basis of Defendants' misconduct is common to all Class Members because Defendants have engaged in systematic deceptive and fraudulent behavior that was deliberate, includes negligent misconduct, and results in the same injury to all Class Members.

98.    <u>Commonality</u>: Common questions of law and fact exist as to all Members of the Class. These questions predominate over questions that may affect only individual Class Members because Defendants have acted on grounds generally applicable to the Class. Such common legal or factual questions include, *inter alia*:

(a)    Whether the Underwear contained PFAS at any detectible level;

(b)    Whether Defendants' practices in marketing the Underwear tend to mislead reasonable consumers;

(c)    Whether Defendants omitted, failed to disclose or concealed material information to Plaintiffs and Class Members regarding the Underwear;

(d)    Whether Defendants breached the implied warranty of merchantability relating to the Underwear;

(e)    Whether Defendants breached express warranties relating to the Underwear;

(f)    Whether Defendants engaged in false or misleading advertising;

(g)    Whether Plaintiffs and Class Members are entitled to damages, including compensatory, exemplary, and statutory damages, and the amount of such damages;

(h)    Whether Plaintiffs and Class Members either paid a premium for the Underwear that they would not have paid but for the marketing of Knix's Period Underwear or would not have purchased them at all;

(i)    Whether Plaintiffs and the other Class Members have been injured and the proper measure of their losses as a result of those injuries; and

(j)    Whether Plaintiffs and the other Class Members are entitled to injunctive, declaratory, or other equitable relief.

99.     Adequate Representation: Plaintiffs will fairly and adequately protect the interests of Class Members. They have no interests antagonistic to those of Class Members. Plaintiffs retained attorneys experienced in the prosecution of class actions, including consumer products, misrepresentation, mislabeling, and PFAS class actions, and Plaintiffs intends to prosecute this action vigorously.

100.    Injunctive/Declaratory Relief: The elements of Rule 23(b)(2) are met. Defendants will continue to commit the practices alleged herein, and Plaintiffs and Class Members will remain at an unreasonable risk of confusion as to whether Knix's Period Underwear may contain any amount of PFAS chemicals. Defendants have acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief, public injunctive relief, and corresponding declaratory relief are appropriate respecting the Class as a whole. Injunctive relief, and specifically public injunctive relief, is necessary in this action.

101.    Predominance and Superiority: Plaintiffs and Class Members have all suffered harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high given the average price point of Knix's Period Underwear and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

102.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

103.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class appropriate.

## FIRST CLAIM FOR RELIEF
### Breach of Express Warranty
### (Plaintiffs Individually and on Behalf of the Nationwide Class)

104. Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class and repeat and re-allege all previous paragraphs, as if fully included herein.

105. Defendants manufactured, marketed, advertised, distributed, and sold the Underwear as part of their regular course of business.

106. Defendants made affirmations of fact and promises through the marketing and advertising described herein. Defendants expressly represented and warranted that the Underwear is, *inter alia*:

    a.  Free of PFAS chemicals;

    b.  Fluorine free;

    c.  OEKO-TEX certified;

    d.  "Sustainable"; and

    e.  Regularly tested for the presence of PFAS and other toxic chemicals;

107. Defendants made the foregoing express representations and warranties to all consumers, which became the basis of the bargain between Plaintiffs and the Class and Defendants.

108. Plaintiffs and the Class Members purchased the Underwear directly from Defendants.

109. Defendants breached the foregoing express warranties by placing the Underwear into the stream of commerce and selling them to consumers, when certain samples of the Underwear contained PFAS in amounts that are detectable using testing methods with  more sensitive detection limits than those used by Knix's independent third-party testing labs, and otherwise fail to contain the properties they were represented to possess.

110. As manufacturer, marketer, advertiser, distributer and seller of the Underwear, Defendants are the only parties with knowledge and notice of the fact that certain samples of the Underwear may contain PFAS in amounts that are detectable using testing methods with  more sensitive detection limits than those used by Knix's independent third-party testing labs.

111. Plaintiffs and Class Members were injured as a direct and proximate result of Defendants' breaches of warranties because they would not have purchased the Underwear or

would have paid less for it if the true facts had been known. Specifically, Plaintiffs and Class Members have suffered economic damages in connection with the purchase of the Underwear.

112.    Defendants have been put on sufficient notice of their breach through Plaintiffs' pre-suit notice letter.

113.    Despite having notice and knowledge of the breach, Defendants failed to provide any relief to Class Members, failed to provide a non-defective replacement, and otherwise failed to offer any appropriate compensation from the resulting damages.

114.    As a direct and proximate result of Defendants' breach of its express warranties, Plaintiffs and Class Members did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Underwear.

115.    Plaintiffs and Class Members are therefore entitled to legal and equitable relief including damages, costs, attorneys' fees, rescission, and all such other relief deemed appropriate, for an amount to compensate them for not receiving the benefit of their bargain.

<u>**SECOND CLAIM FOR RELIEF**</u>
**Breach of Implied Warranties**
**(Plaintiffs Individually and on Behalf of the Nationwide Class)**

116.    Plaintiffs bring this count on behalf of themselves and the Nationwide Class and repeat and re-allege all previous paragraphs, as if fully included herein.

117.    As described above, Plaintiffs have standing to pursue this claim because they have suffered injury-in-fact and have lost money or property as a result of Defendants' conduct.

118.    Defendants were at all relevant times the manufacturer, distributor, warrantor, and/or seller of the Underwear. Defendants knew or had reason to know of the specific use for which the Underwear was purchased, including that the Underwear was marketed, advertised, and sold as a sustainable, eco-friendly alternative feminine hygiene products that are 100% free from PFAS.

119.    By placing the Underwear into the stream of commerce, Defendants provided Plaintiffs and Class Members with implied warranties that the Underwear were merchantable and fit for the ordinary purposes for which they were sold.

120.    However, the Underwear are not fit for its ordinary purpose of being used as a PFAS-free menstrual product because, *inter alia*, certain samples of the Underwear contained

PFAS in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs.

121.     Defendants impliedly warranted that the Underwear were of merchantable quality and fit for such use. These implied warranties included, among other things, a warranty that the Underwear manufactured, supplied, distributed, and/or sold by Defendants were fit for use as a PFAS-free menstrual product.

122.     Contrary to the applicable implied warranties, the Underwear, at the time of sale and thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and Class Members with a PFAS-free menstrual product. Instead, samples of the Underwear contained PFAS in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs and are therefore neither PFAS-free nor suitable for use, as alleged herein.

123.     Defendants' actions, as complained of herein, breached the implied warranties that the Underwear were of merchantable quality and fit for such use.

124.     Plaintiffs and Class Members sustained damages as a direct and proximate result of Defendants' breaches in that they paid a premium for the Underwear that they would not have otherwise paid. Plaintiffs and the Class also did not receive the value of the Underwear they paid for—the Underwear are worth less than Defendants represent due to the presence PFAS.

125.     Plaintiffs and the Class have sustained, are sustaining, and will sustain damages if Defendants continue to engage in such deceptive, unfair, and unreasonable conduct.

126.     As a result of the breach of the implied warranty of merchantability, Plaintiffs and Class Members are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

### THIRD CLAIM FOR RELIEF
**Unjust Enrichment**
**(Plaintiffs Individually and on Behalf of the Nationwide Class)**

127.     Plaintiffs bring this count on behalf of themselves and the Nationwide Class, and repeat and re-allege all previous paragraphs, as if fully included herein.

128.     Plaintiffs and Class Members conferred a monetary benefit on Defendants, and Defendants had knowledge of this benefit. The average retail price for the Underwear is $21.00 or more.

129.    By their wrongful acts and omissions described herein, including selling the Underwear, certain samples of which had PFAS in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs, Defendants were unjustly enriched at the expense of Plaintiffs and Class Members.

130.    Plaintiffs and Class Members' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct alleged herein.

131.    Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and Class Members under circumstances in which it would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Underwear.

132.    Plaintiffs and Class Members have been damaged as a direct and proximate result of Defendants' unjust enrichment because they would not have purchased the Underwear on the same terms or for the same price had they known that certain samples of the Underwear contained detectable levels of PFAS.

133.    Defendants either knew or should have known that payments rendered by Plaintiffs and Class Members were given and received with the expectation that the Underwear were free of PFAS, environmentally sustainable, and otherwise capable of providing the benefits represented by Defendants in the labeling, marketing, and advertising of the Underwear. It is inequitable for Defendants to retain the benefit of payments under these circumstances.

134.    When required, Plaintiffs and Class Members are in privity with Defendants because Defendants' sale of the Underwear was direct. Purchase through authorized retailer and resellers is sufficient to create such privity because such authorized third parties are Defendants' agents for the purpose of the sale of the Underwear.

135.    As a direct and proximate result of Defendants' wrongful conduct and unjust enrichment, Plaintiffs and Class Members are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

## FOURTH CLAIM FOR RELIEF
### Negligent Misrepresentation
### (Plaintiffs Individually and on Behalf of the Nationwide Class)

136.    Plaintiffs bring this claim individually and on behalf of the members of the Nationwide Class and repeat and re-allege all previous paragraphs, as if fully included herein.

137. As discussed above, Defendants represented to Plaintiffs and Class Members that the Underwear were PFAS-free, despite the fact that certain samples of the Underwear contained PFAS chemicals in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs.

138. At the time Defendants made these representations, Defendants should have known that these representations were false or otherwise made them without knowledge of their truth or veracity. Specifically, although Defendants obtained independent third-party testing that did not detect the presence of PFAS, Defendants should have known that testing was insufficient to support a claim that the Underwear was "100% PFAS free."

139. At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about the Underwear.

140. The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase the Underwear.

141. Plaintiffs and Class Members would not have purchased the Underwear if the true facts had been known.

142. The negligent actions of Defendants caused damage to Plaintiffs and Class Members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully requests that this Court:

A. Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Name Plaintiffs as Class Representatives of their respective Classes;

C. Name Plaintiffs' counsel as Class Counsel for the Classes;

D. Award damages, including compensatory, exemplary, punitive and statutory damages, to Plaintiffs and the Class in an amount to be determined at trial;

E. Permanently enjoin Defendants from engaging in the wrongful and unlawful conduct alleged herein;

F. Award Plaintiffs and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

G.   Award Plaintiffs and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

H.   Award such further relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiffs, individually and on behalf of all others similarly situated, respectfully demand a trial by jury on all claims so triable.

DATED: September 1, 2023.                    By their attorneys,

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

*/s/ Mitchell Breit*
Mitchell Breit
405 East 50th Street
New York, New York 10022
Tel:  (347) 668-8445
mbreit@milberg.com

Erin J. Ruben*
J. Hunter Bryson*
900 W. Morgan Street
Raleigh, NC 27603
P.O. Box 12638
Raleigh, NC 27605
eruben@milberg.com
jbryson@milberg.com

Harper T. Segui*
825 Lowcountry Blvd., Suite 101
Mt. Pleasant, SC 29464
hsegui@milberg.com

Rachel Soffin*
3833 Central Avenue
St. Petersburg, Florida 33713
rsoffin@milberg.com

***Attorneys for Plaintiffs and the Putative Class***

**Pro Hac Vice Forthcoming*