**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ERIN SPENCER and NICKOLE GONZALEZ, individually and on behalf of all others similarly situated, | CASE NO. 1:23-cv-07823 |
| Plaintiffs, | Hon. Jennifer L. Rochon |
| v. | MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT |
| KNIX WEAR, INC., KNIX WEAR LLC, KNIX WEAR CALIFORNIA LLC, KNIX WEAR US, INC., and KNIX SAN DIEGO UTC, LLC, | |
| Defendants. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................................iv

I.      INTRODUCTION..................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................2

   A.   Relevant Factual Background ........................................................................3

   B.   Mediation and Settlement Negotiations..........................................................4

   C.   Proposed Settlement and Its Value.................................................................6

      1.   The Settlement Fund................................................................................6

      2.   Benefits to Settlement Class Members ....................................................7

      3.   Release of Claims ...................................................................................8

   D.   Preliminary Approval ....................................................................................8

   E.   Costs, Fees, and Service Awards....................................................................9

III.    ARGUMENT......................................................................................................10

   A.   Notice to the Settlement Class Satisfied the Requirements of Rule 23 and Due Process .10

   B.   The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved by the Court ....................................................................................................................12

      1.   The Proposed Settlement is Procedurally Fair ........................................15

      2.   The Proposed Settlement is Substantively Fair .......................................16

         a.   Litigation Through Trial Would be Complex, Costly, & Long (*Grinnell* Factor 1) 16

         b.   The Reaction of the Class is Overwhelmingly Positive (*Grinnell* Factor 2) ...........17

         c.   Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3).........................................................................................19

         d.   The Continued Litigation Risks Related to Establishing Liability, Damages, and Maintaining a Class Action Through Trial Support the Settlement (*Grinnell* Factors 4, 5, and 6) .......................................................................................................................20

         e.   The Ability of Defendant to Withstand a Greater Judgment (*Grinnell* Factor 7) ....22

f.      The Settlement Amount is Reasonable in Light of the Possible Recovery and the Attendant Risks of Litigation (Grinnell Factors 8 and 9)................................................23

CONCLUSION........................................................................................................................25

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Belfiore v. The Procter & Gamble Company*, No. 2:14CV04090 (E.D.N.Y.)............................25

*Charron v. Pinnacle Grp. N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012)...................................................................................19

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) .........................................................................17

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001) ..................................................................................................15

*deMunecas v. Bold Food, LLC*,
    No. 09 CIV. 00440 DAB, 2010 WL 3322580 (S.D.N.Y. Aug. 23, 2010) .........................20, 22

*Denney v. Jenkens & Gilchrist*,
    230 F.R.D. 317 (S.D.N.Y. 2005) .........................................................................................22

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ...........................................................................................passim

*Dickens, et al. v. Thinx, Inc.*, 1:22-cv-04286-JMF .....................................................................25

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)...................................................................................14, 23

*Hanlon v. Chrysler*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................................................18

*Hesse v. Godiva*, Case No. 1:19-cv-00972-AJN (S.D.N.Y.).......................................................24

*In re "Agent Orange" Prod. Li*ab. Litig.,
    597 F. Supp. 740 (E.D.N.Y. 1984)......................................................................................24

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*,
    271 F. App'x 41 (2d Cir. 2008) ...........................................................................................10

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014) ...................................................................................12, 19

*In re Am. Bank Note Holographics, Inc. Sec. Litig.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................................21

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. 2013) .................................................................................. 12, 15

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ............................................................................ 16, 20

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ..................................................................14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...................................................................23

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 19, 20, 24

*In re GSE Bonds Antitrust Litig.*,
    2020 WL 3250593 (S.D.N.Y. June 16, 2020) ...................................................................1

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) .............................................................................13

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..............................................................24

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................................................................10

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................................18

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) .............................................................................23

*In re Painewebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y.1997) ......................................................................................20

*In re Patriot Nat'l, Inc. Sec. Litig.*,
    828 F. App'x 760 (2d Cir. 2020) .....................................................................................25

*In re Petrobas Secs. Litig.*,
    2018 WL 4521211 (S.D.N.Y. Sept. 21, 2018) ..................................................................2

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) .....................................................................................17

*In re Take Two Interactive Sec. Litig.*,
    No. 06 CIV. 1131 (RJS), 2010 WL 11613684 (S.D.N.Y. June 29, 2010) ........................11

*In re Telik Inc. Sec. Litig.,*
   576 F.Supp.2d 570 (S.D.N.Y.2008) .................................................................15

*In re Time Warner, Inc. Sec. & ERISA Litig.,*
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ........................................................24

*In re Vitamin C Antitrust Litig.,*
   2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012).................................... 16, 17, 20, 22

*In re Warner Commc'ns Sec. Litig.,*
   618 F. Supp. 735 (S.D.N.Y. 1985).....................................................................21

*Maley v. Del Global Techs. Corp.,*
   186 F.Supp.2d 358 (S.D.N.Y.2002) ..............................................................15, 20

*Marisol A. ex rel. Forbes v. Giuliani,*
   185 F.R.D. 152 (S.D.N.Y.1999) .......................................................................20

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972) .........................................................................23, 24

*Santos v. Nuve Miguel Corp.,*
   2023 WL 2263207 (S.D.N.Y. Feb. 28, 2023).....................................................12

*Strougo v. Bassini,*
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ...............................................................22

*Swetz v. GSK Consumer Health, Inc.,*
   2021 WL 5449932 (S.D.N.Y. Nov. 22, 2021).....................................................13

*TBK Partners, Ltd. v. Western Union Corp.,*
   517 F. Supp. 380 (S.D.N.Y. 1981).....................................................................17

*Tiro v. Public House Invs., LLC,*
   2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013).....................................................14

*Torres v. Gristede's Operating Corp.,*
   2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) .....................................................19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,*
   396 F.3d 96 (2d Cir. 2005) ...........................................................................10, 14

*Weigner v. City of N.Y.,*
   852 F.2d 646 (2d Cir. 1988) .............................................................................10

*Weinberger v. Kendrick,*
   698 F.2d 61 (2d Cir. 1982) ...............................................................................15

*Wright v. Stern*,
    553 F.Supp.2d 337 (S.D.N.Y.2008)..................................................................1, 18

*Yang v. Focus Media Holding Ltd.*,
    2014 WL 4401280 (S.D.N.Y. Sep. 4, 2014)........................................................16

<u>Rules</u>

Fed. R. Civ. P. 23(a) and (b)...........................................................................................13

Fed. R. Civ. P. 23(c)........................................................................................10, 11, 12

Fed. R. Civ. P. 23(e)........................................................................................12, 13, 14

Rule 23(c)(3)...................................................................................................................11

Plaintiffs Erin Spencer and Nickole Gonzalez ("Plaintiffs" or "Class Representatives"), by and through undersigned counsel and pursuant to Rule 23 of the Federal Rules of Civil Procedure, hereby file this Memorandum in Support of Motion for Final Approval of Class Action Settlement.

## I.    **INTRODUCTION**

On October 30, 2023, this Court preliminarily approved the Settlement Agreement[1] between Plaintiffs and Defendants Knix Wear, Inc., Knix Wear LLC, Knix Wear California LLC, Knix Wear US, Inc., and Knix San Diego UTC, LLC ("Defendants" or collectively, "Knix"). KCC, the settlement administrator appointed by the Court in this case, has implemented the approved notice plan and notice has reached the vast majority of the certified Settlement Class. The reaction from the Settlement Class has been overwhelmingly positive. For the nearly 700,000 direct notices sent to Settlement Class Members, there have been no objections and only 27 requests for exclusion. "The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness. *Wright v. Stern*, 553 F.Supp.2d 337, 344–45 (S.D.N.Y.2008); *see also In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593 at *2 (S.D.N.Y. June 16, 2020) (Rakoff, J.) ("*In re GSE Bonds II*") ("[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (internal quotation omitted).

The Settlement is an excellent result for Settlement Class Members, providing a common fund of up to $2 million to pay for cash claims, notice and settlement administration, attorneys' fees and costs, and service awards. The Settlement not only provides significant monetary relief to Settlement Class Members in the form of cash payments to Settlement Class Members, it also includes valuable non-monetary relief related to Knix's quality control measures. Eligible Settlement Class Members will be paid $5.30 for each Knix Product they purchased, for up to three

---

[1] Capitalized terms not defined in this brief shall have the same definitions and meanings ascribed to them in the Settlement Agreement. ECF No. 9-1.

(3) Knix Products, with a maximum cash payment of $15.90. If any funds remain after payment to class members, the parties will seek the Court's approval to distribute the residual funds to one or more charities, to be selected later if the need arises. *See In re Petrobas Secs. Litig.*, 2018 WL 4521211, at *5 (S.D.N.Y. Sept. 21, 2018) (Rakoff, J.) (holding *cy pres* recipients may be identified after settlement approval and a determination that there are funds remaining for *cy pres* distribution).

The proposed Settlement is fair, reasonable, and adequate, and resolves all of Plaintiffs' and Settlement Class Members' claims against Knix in this action. The Settlement is the product of extensive arms' length negotiations between experienced attorneys familiar with the legal and factual issues of this case, including a full-day mediation before Bradley Winters of JAMS ADR, who is experienced in mediating class action claims, and many additional months spent negotiating additional details of the Settlement. Moreover, the parties have worked diligently over the course of nearly two years to resolve the claims which are the subject of this action, and accordingly the parties have ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the proposed Settlement. The Settlement is an exceptional result for the Class because, despite the significant risks of further litigation, Plaintiffs secured substantial monetary relief for Settlement Class Members.

For these reasons, as further discussed herein, Plaintiffs and Class Counsel firmly believe the Settlement is in the best interest of the Settlement Class and satisfies the standards for final approval, and therefore the Settlement warrants this Court's final approval.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Knix designs, manufactures, markets, advertises, distributes, and sells women's apparel, including leakproof apparel which are designed as an alternative to traditional single-use feminine

hygiene products like tampons. Compl.[2] ¶ 2. The market for reusable feminine hygiene products, like the Knix Products, has recently expanded as a growing number of consumers seek alternative methods of managing menstruation. *Id.* ¶¶ 3, 24. As part of its efforts to attract customers in this market, Knix's marketing included a campaign targeted at consumers seeking safe and environmentally sustainable menstrual products. *Id.* ¶ 4.

### A.  Relevant Factual Background

Beginning in February 2020, proposed Class Counsel began to investigate the potential presence of PFAS in menstrual underwear sold and manufactured by Defendants. *See* Joint Declaration of Class Counsel in Support of Plaintiffs' Motion for Final Approval ("Joint Decl."), Exhibit 1 at ¶ 8. In order to determine whether PFAS were present in the Knix Products, Class Counsel engaged an independent laboratory to conduct analytical testing for detecting PFAS in textiles. *Id.* ¶¶ 10, 12.  Class Counsel spent a significant amount of time analyzing testing reports and working with an expert to develop a broad understanding of the methodologies used to detect PFAS in textiles like the Knix Products prior to commencing litigation. *Id.* ¶ 12.

On February 23, 2022, Class Counsel sent notice to Defendants on behalf of Plaintiffs and other consumers who purchased Defendants' Knix Products. *Id.* ¶ 14. The letter notified Defendants of Plaintiffs' intent to file a class action lawsuit against Defendants alleging various causes of action, including breach of warranties, breach of contract, unjust enrichment, negligent misrepresentation, fraud, and violations of various state consumer protection statutes. *Id.* Prior to sending notice, Class Counsel spent significant time drafting Plaintiffs' complaint in anticipation of filing, and a draft version of the complaint was included in the notice letter for Defendants' review. *Id.* ¶ 14.

---

[2] "Compl." refers to Plaintiffs' Complaint, ECF No. 1.

Plaintiffs' complaint alleges that beginning in January 2020, Knix utilized various marketing, advertising, and promotional materials that represented Knix Products as "sustainable," "PFAS free," "fluorine free," and "tested and cleared for harmful substances." Compl. ¶¶ 5. Knix represented that its statements were based on independent third-party testing that did not detect the presence of PFAS or organic fluorine in the tested products. *Id.* ¶ 7.

Plaintiffs purchased Knix Products because they were seeking a safe, sustainable form of menstrual protection that did not contain harmful chemicals. *Id.* Plaintiffs purchased Knix Products in reliance on Knix's specific representations, including that Knix Products were environmentally friendly, sustainable, toxic chemical free, PFAS free, and Fluorine free. *Id.* These representations were material to Plaintiffs when purchasing Knix Products. *Id.* ¶¶ 61, 68.

Plaintiffs sought independent third-party testing to determine whether certain Knix Products contained PFAS. *Id.* ¶ 38. Plaintiffs' testing revealed that certain samples of the Underwear contained certain PFAS in amounts that are detectable using testing methods with more sensitive detection limits than those used by Knix's independent third-party testing labs. *Id.* ¶ 39. Plaintiffs allege that their independent testing directly contradicts Defendants' representations that the Knix Products are "PFAS free" or "fluorine free." *Id.* ¶ 9.

### B. Mediation and Settlement Negotiations

After receiving notice of Plaintiffs' claims, the parties began to explore the possibility of a class-wide resolution prior to the filing of Plaintiffs' complaint. Joint Decl. at ¶ 15. After several discussions regarding the merits of Plaintiffs' claims and Knix's potential defenses, the parties agreed to engage in formal mediation with Bradley Winters of JAMS. *Id.* ¶¶ 16, 17. In preparation for mediation, the parties exchanged discovery pursuant to Fed. R. Evid. 408, which allowed them to fully evaluate a potential settlement. *Id.* ¶ 18. Additionally, the parties drafted confidential

mediation briefs which were submitted to Mr. Winters to aid in settlement discussions. *Id*. The parties continued to discuss settlement at length in the weeks leading up to mediation. *Id*. ¶ 19.

As a result of extensive expert investigation, as well as independent investigation of proposed Class Counsel regarding the representations at issue, Plaintiffs and proposed Class Counsel entered these settlement negotiations with substantial information about the nature and extent of the challenged practices, as well as the merits of the legal claims and factual allegations. *Id*. ¶ 21. Plaintiffs and proposed Class Counsel also had the ability to review key documents and information in this matter pursuant to Fed. R. Evid. 408. *Id*. ¶ 22. Review of this information positioned proposed Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id*. ¶ 23.

On June 14, 2022, the parties participated in a full-day mediation with Bradley Winters but were unable to reach a settlement at that time. *Id*. ¶ 24. However, the parties continued to engage in substantive settlement discussions in the days immediately following the mediation. *Id*. ¶ 25. These discussions continued over a period of many weeks and months, and included numerous phone calls, video conferences, and written exchanges in an attempt to reach a resolution. *Id*. ¶ 26. Over the subsequent months, the parties continued to discuss and finalize the details of the Settlement Agreement, including the terms of injunctive relief, the release, claims administrator, notice plan, and schedule. *Id*. ¶ 28. During this process, the parties had regular Zoom conferences and continued to exchange redlines and drafts of documents. *Id*. ¶ 29. The parties did not agree to attorneys' fees and costs, or service awards for Class Representatives until after an agreement had been reached as to the monetary and non-monetary relief to the class. *Id*. ¶ 30.

On September 1, 2023, Plaintiffs filed their complaint in this action for purposes of settlement. ECF No. 1. Immediately thereafter, Plaintiffs filed their unopposed Motion for

Preliminary Approval and accompanying memorandum of law. ECF Nos. 8-9. On October 12, 2023, the Court held a Preliminary Approval Hearing, after which Plaintiffs filed a supplemental memorandum of law in support of their Motion for Preliminary Approval. ECF No. 33. On October 30, 2023, this Honorable Court granted preliminary approval. ECF No. 34. Pursuant to the Court's Order, notice was issued to Settlement Class Members, and Class Counsel has continued to devote time to assisting Settlement Class Members with various concerns related to the Settlement, including engaging in telephone and e-mail communications with Settlement Class Members. Joint Decl. ¶ 36.

### C. Proposed Settlement and Its Value

The Settlement Agreement provides for a common fund of up to Two Million Dollars ($2,000,000) ("Settlement Amount"), comprising a $1,400,000 Cash Minimum Amount and $600,000 Replenishment Amount. The Class Benefit provides monetary relief for Settlement Class Members. In addition to the monetary value of the proposed Settlement, Defendants will continue to take measures to help ensure that PFAS are not intentionally added to Knix Products at any stage of production.

### 1. The Settlement Fund

Defendants will establish a Cash Minimum Fund, subject to replenishment by the Replenishment Amount, providing for payment of valid claims by Settlement Class Members, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court as follows:

> a. A non-reversionary cash fund in the amount of $1,400,000 providing for payment of valid claims by Settlement Class Members, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court ("Cash Minimum Fund"). Knix shall pay into the Cash Minimum Fund a portion of the Cash Minimum Amount sufficient to cover the estimated costs of Notice and settlement administration, as provided by the Settlement Administrator, within 21 days after Preliminary Approval.

b. If total valid claims, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court exceed the amount of the Cash Minimum Fund, Knix shall pay a Replenishment Amount of up to $600,000 to cover additional valid claims by Settlement Class Members that would not otherwise be paid. Knix shall in no event be required to pay any amounts above the Cash Minimum Fund amount other than for such actual valid claims. And, in no event shall Knix be required to pay any amount in excess of $2,000,000 (the "Maximum Cap").

c. If total valid claims, Notice and administration costs, and attorneys' fees, costs, and service awards approved by the Court are less than the amount of the Cash Minimum Fund, the amount remaining shall be paid to a *cy pres* charity to be agreed upon by the parties and approved by the Court.

d. If, after payment of Notice and administration costs and any attorneys' fees, costs, and service awards approved by the Court, payment of total valid claims would exceed the Maximum Cap, the payments to Settlement Class Members shall be prorated.

## 2. Benefits to Settlement Class Members[3]

Each Settlement Class Member who timely submits a valid Claim Form ("Valid Claimant") shall receive cash reimbursement for past purchases of Knix Products (up to three pairs total) ("Class Benefit"), on the following terms:

Each Valid Claimant will receive a $5.30 refund for each of up to three pairs of Knix Products purchased during the Class Period that are reflected in Knix's records, or for which they submit a valid proof of purchase together with the Claim Form. The maximum cash reimbursement available for purchases reflected in Knix's records or with proof of purchase will be $15.90 per valid claimant.

---

[3] Notably, proposed Class Counsel in this litigation recently received final approval of a settlement involving allegations of PFAS in menstrual underwear manufactured and sold by one of Knix's competitors. *See Dickens, et al. v. Thinx, Inc.*, 1:22-cv-04286-JMF, Dkt. No. 57 (June 8, 2023, S.D.N.Y.). Although there are differences between the facts in the *Thinx* case and those here, the *Thinx* agreement also accomplished monetary recovery for class members of 25% of the average retail price up to a certain number of pairs of underwear, as well as significant injunctive relief related to testing and labeling.

Knix also affirms that it will continue to take measures to ensure that PFAS are not intentionally added to Knix Products at any stage of production, including through periodic testing. Knix has supplemented its pre-existing testing procedures to increase the frequency and sensitivity of the testing it performs, and will continue to test accordingly for a period of two years from the date of Preliminary Approval. Knix will also require fabric suppliers to increase the frequency of their PFAS and organic fluorine testing. Knix has also revised its website, in accordance with the Settlement Agreement, to remove references to Knix Products being "PFAS Free," "Toxic Chemical Free," and "Fluorine Free."

### 3.  Release of Claims

In exchange for the foregoing relief, the Settlement Class Members who do not opt out of the Settlement will release Defendants from all claims that arise out of, or relate to, the Allegations asserted in the Complaint, or that were asserted or could have been asserted in this Action, as described in Section 10.1 of the Settlement Agreement. The released claims exclude claims for personal injury.

### D.  Preliminary Approval

On October 30, 2023, this Court granted preliminary approval of the Settlement. ECF No. 34. In the Preliminary Approval Order, the Court preliminarily certified a settlement class including "[a]ll persons who purchased Knix Products in the United States, its territories, and/or the District of Columbia, from January 1, 2020, to December 31, 2022." *Id*. at ¶ 2. The Court appointed Erin Ruben, Hunter Bryson, Harper Segui, and Rachel Soffin as Class Counsel. *Id*. at ¶ 6. The Court appointed Erin Spencer and Nickole Gonzalez as Class Representatives. *Id*. at ¶ 5.

The Court preliminarily found that the Settlement met the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id*. at ¶ 4. In addition, the Court preliminarily found that the Settlement "is the

product of extensive, non-collusive, arm's-length negotiations between experienced counsel who were thoroughly informed of the strengths and weaknesses of the case through pre-suit discovery pursuant to Fed. R. Evid. 408, extensive settlement discussions, and who mediated before Bradley Winters of JAMS ADR," and "is within the range of possible approval because it compares favorably with the expected recovery balanced against the risks of continued litigation, does not grant preferential treatment to the Plaintiffs and Class Counsel, and has no obvious deficiencies." *Id*. at ¶ 8. The Court preliminarily approved the Settlement, as "fair, reasonable, and adequate, and in the best interest of the Plaintiffs and the other Settlement Class Members, subject to further consideration at the Final Approval Hearing." *Id*. at ¶ 9.

The Court approved the form and content of the Notice to the Settlement Class and appointed KCC to serve as the Settlement Administrator. *Id*. at ¶¶ 11-13. As discussed below, the Notice program has been timely implemented in accordance with the Preliminary Approval Order.

### E.  Costs, Fees, and Service Awards

Plaintiffs have filed a Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards. ECF No. 37. As further discussed in Plaintiffs' Memorandum In Support of Unopposed Motion For Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards (ECF No. 38), Plaintiffs have respectfully requested that this Honorable Court: (1) award Plaintiffs' Counsel attorneys' fees of $489,479.00, which is an amount equal to 24% of the total $2,000,000 Settlement value and which represents a 1.1 lodestar multiplier; (2) award Plaintiffs' Counsel reimbursement of litigation costs of $8,520.66; and (3) award payments of $1,000 each to Class Representatives Erin Spencer and Nickole Gonzalez (for a total of $2,000). Defendants do not object to this motion.

Class Counsel's fee petition explains why the requested fee and expense award is reasonable. *Id.* Settlement Class Counsel has not been paid for their extensive efforts or reimbursed

for litigation costs incurred. The requested fee award will serve to compensate Class Counsel for their time, risk, and expense incurred in this litigation, including all of the work already performed in this case, all of the work remaining to be performed in connection with this Settlement, and the risks undertaken in prosecuting this case. Importantly, the enforceability of the Settlement Agreement is not contingent on the amount of attorneys' fees or costs or service awards to Plaintiffs that may be approved by the Court.

### III.  <u>ARGUMENT</u>

#### A. **Notice to the Settlement Class Satisfied the Requirements of Rule 23 and Due Process**

Before final approval can be granted, due process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "Such notice to class members need only be reasonably calculated under the circumstances to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *12 (S.D.N.Y. Dec. 23, 2009). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B). At its core, all that notice must do is "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (citation omitted). "It is clear that for due process to be satisfied, not every class member need receive actual notice, as long as counsel 'acted reasonably in selecting means likely to inform persons affected.'" *In re Adelphia Commc'ns Corp. Sec. & Derivative Litigs.*, 271 F. App'x 41, 44 (2d Cir. 2008) (quoting *Weigner v. City of N.Y.*, 852 F.2d 646, 649 (2d Cir. 1988)).

10

The Notice here, which was disseminated via: (i) email; (ii) U.S. mail (for members of the Settlement Class for whom Knix does not have an e-mail address on file or for whom e-mail notice was undeliverable); (iii) a geo-targeted media campaign; (iv) the Settlement Website; and (v) a toll-free telephone number, provides all the necessary information for Settlement Class Members to make an informed decision regarding the Settlement. The forms of notice utilized "clearly and concisely state in plain, easily understood language," the: (1) nature of the action; (2) definition of the certified class; (3) the class claims, issues, or defenses; (4) that a class member may appear through counsel; (5) that a class member will be excluded at their request; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment under Rule 23(c)(3). *See In re Take Two Interactive Sec. Litig.*, No. 06 CIV. 1131 (RJS), 2010 WL 11613684, at *12–13 (S.D.N.Y. June 29, 2010). The Court's Preliminary Approval Order has already determined that the Notice and Notice Plan provide due, adequate, and sufficient notice to the Settlement Class, in addition to satisfying the requirements of Rule 23 of the Federal Rules of Civil Procedure, due process, and all other applicable law and rules. ECF No. 34 at ¶ 12.

In accordance with the Preliminary Approval Order, on December 12, 2023, KCC began disseminating Email Notice for each member of the Settlement Class for whom Knix had an email address and mailing Postcard Notice for each member of the Settlement Class for whom Knix did not have an email address. *See* Exhibit 2, Declaration of Vanessa Santacruz on Implementation and Adequacy of Notice Plan ("Santacruz Decl.") at ¶¶ 10, 16. In addition, KCC implemented the geo-targeted media campaign that resulted in approximately 2,016,630 impressions. *Id.* at ¶¶ 21-23. KCC also established the Settlement Website which contained a Claim Form submission capability during the claims period and which continues to contain relevant documents, including the Complaint, Preliminary Approval Motion and Order, the detailed Class Notice, the Settlement Agreement, and Class Counsel's and Plaintiffs' application

for attorneys' fees, costs, and service awards. *Id.* at ¶¶ 24-27.

This combination of direct Email Notice, Postcard Notice and geo-targeted Publication Notice was "the best notice . . . practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B); *see, e.g.*, *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182–83 (S.D.N.Y. 2014). Email Notice and/or Postcard Notice was delivered to 693,983 of the 694,042 unique, identified Settlement Class Members, meaning notice reached 99.9% of identified Settlement Class Members. Santacruz Decl. at ¶ 20. Further, the geo-targeted Publication Notice, which included targeted advertising linking readers to the Settlement Website, resulted in approximately 2,016,630 impressions. *Id.* at ¶ 23. Given the broad reach of the Notice, and the comprehensive information provided to the Settlement Class, the requirements of due process and Rule 23 are easily met.

**B. The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved by the Court**

Claims in a certified class action may be settled only with the court's approval "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Under Rule 23(e), to grant final approval of a Settlement, the Court must determine whether the Proposed Settlement is fair, reasonable, and adequate. In making this determination, the Court must review both the procedural and substantive fairness of a proposed settlement. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 464 (S.D.N.Y. 2013).

The Court's Preliminary Approval Order provisionally certified a Settlement Class solely for purposes of settlement. *See* ECF No. 34. No substantive changes have occurred since that ruling, and, more importantly, no objections have challenged that conclusion. The Court should reaffirm the preliminary approval order to find that class certification is appropriate for purposes of final approval. *See*, *e.g.*, *Santos v. Nuve Miguel Corp.*, 2023 WL 2263207, at *1 (S.D.N.Y. Feb. 28, 2023) ("the Court confirms as final its certification of the Class for settlement purposes based on its findings in the Preliminary Approval Order and in the absence of any objections from Class

12

Members to such certification."); *Swetz v. GSK Consumer Health, Inc.*, 2021 WL 5449932, at *2 (S.D.N.Y. Nov. 22, 2021) ("Certification of the Settlement Class is hereby reaffirmed as a final Settlement Class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) for the same reasons set forth in the Court's Preliminary Approval Order.").

The Second Circuit's settlement approval analysis generally relies on two overlapping multi-factor tests. Federal Rule of Civil Procedure 23(e)(2) supplies the first test, which requires the Court, in evaluating the fairness, reasonableness, and adequacy of a settlement, to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> i.   the costs, risks, and delay of trial and appeal;
>>
>> ii.  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> iii. the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> iv.  any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23 (e)(2). *See In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019).

To determine substantive fairness, Courts supplement the 23(e)(2) analysis with the *Grinnell* factors, which include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Wal-Mart Stores, Inc.*, 396 F.3d at 117 (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)).

Final approval of the Settlement is appropriate here because the Settlement is procedurally and substantively fair, adequate, and reasonable. *See* Fed. R. Civ. P. 23(e)(2). To determine whether to approve a settlement, "[c]ourts examine procedural and substantive fairness in light of the 'strong judicial policy in favor of settlement' of class action suits." *Tiro v. Public House Invs., LLC*, 2013 WL 4830949, at *5 (S.D.N.Y. Sept. 10, 2013). "Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (internal quotations omitted).

Importantly, courts and public policy considerations favor settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation. "The compromise of complex litigation is encouraged by the courts and favored by public policy," and is particularly encouraged for the compromise of class actions. *Id.* at 117 (internal quotations omitted). If the settlement was achieved through arms'-length negotiations by experienced counsel, "[a]bsent fraud or collusion ... [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### 1.   The Proposed Settlement is Procedurally Fair

To find a settlement procedurally fair, the Court must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations, and that Plaintiffs' Counsel possessed the experience and ability, and engaged in the discovery necessary for effective representation of the Class's interests. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 293 F.R.D. at 464. The Settlement here is the product of extensive arm's-length negotiations spanning nearly one year which were conducted by experienced counsel who are knowledgeable in complex consumer class actions, and the parties engaged in the discovery necessary for effective representation of the Class's interests. *See D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (quoting *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)) ("A court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.').

Class Counsel have considerable experience in handling consumer class actions and are capable of assessing the strengths and weaknesses of their respective positions. Milberg regularly engages in major complex litigation and has extensive experience in consumer class actions that are similar in size, scope, and complexity to this case. Joint Decl. at ¶¶ 1-7. The experience of the firm and attorneys involved demonstrate that the Settlement Class Members were well-represented at the bargaining table. "[G]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *In re Telik Inc. Sec. Litig.,* 576 F.Supp.2d 570, 576 (S.D.N.Y.2008) (citing *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 366 (S.D.N.Y.2002)).

Further, the parties participated in a full day mediation before Bradley Winters of JAMS ADR, who is experienced in mediating class action claims. Joint Decl. at ¶¶ 17, 24. The

participation of this highly qualified mediator strongly supports a finding that negotiations were conducted at arm's length and without collusion. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *5 (S.D.N.Y. Sep. 4, 2014).

## 2.   The Proposed Settlement is Substantively Fair

In addition to being procedurally fair, the Settlement is also substantively fair, reasonable, and adequate. "Courts in the Second Circuit evaluate the substantive fairness, adequacy, and reasonableness of a settlement according to the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012). The nine *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* at *4 (quoting *Grinnell*, 495 F.2d at 463). However, in reviewing and approving a settlement, "a court need not conclude that all of the *Grinnell* factors weigh in favor of a settlement," rather courts "should consider the totality of these factors in light of the particular circumstances." *Id.* Here, the *Grinnell* factors weigh in favor of final approval.

### a.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

The Settlement provides favorable monetary benefits to the Settlement Class while avoiding the significant expenses, delays, and risks associated with litigation. Indeed, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d

164, 174 (S.D.N.Y. 2000). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *TBK Partners, Ltd. v. Western Union Corp.*, 517 F. Supp. 380, 389 (S.D.N.Y. 1981), *aff'd*, 675 F.2d 456 (2d Cir. 1982).

This case is no exception. Plaintiffs understand that proceeding to trial is a risky and labor-intensive undertaking. Plaintiffs anticipate that Defendants would continue to contest the matter at every opportunity and on all fronts. While Plaintiffs believe that the Action has merit and that they would ultimately prevail at trial, continued litigation would last for an extended period before a class might be certified or a final judgment might be entered in favor of the Class (if any). Joint Decl. at ¶ 38. Any trial would likely last several weeks, and involve numerous fact witnesses, experts, and the introduction of voluminous documentary evidence. *Id.* Moreover, any judgment favorable to the Class would be the subject of post-trial motions and appeals, which could significantly prolong the lifespan of this Action. *See, e.g.*, *City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014) (finding that "[e]ven if the Class could recover a judgment at trial, the additional delay through trial, post-trial motions, and the appellate process could prevent the Class from obtaining any recovery for years."). By settling, Plaintiffs avoid the expenditure of resources and risk associated with trial, and they guarantee a quicker recovery to the Class. Because the risks of proceeding to trial are substantial, the settlement warrants final approval. *See e.g.*, *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 210 (S.D.N.Y. 1995) ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush.") (internal quotation marks omitted).

### b.   The Reaction of the Class is Overwhelmingly Positive (*Grinnell* Factor 2)

With the second *Grinnell* factor, the Court judges "the reaction of the class to the settlement." *In re Vitamin C Antitrust Litig*, 2012 WL 5289514, at *4 (quoting *Grinnell*, 495 F.2d

at 463). "It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 333 (E.D.N.Y. 2010) (internal quotation marks omitted). This "significant" factor weighs heavily in favor of final approval.

Here, the reaction of the Class Members to the Settlement has been overwhelmingly positive.[4] Notice has been sent to nearly 700,000 Settlement Class Members in accordance with the requirements of Rule 23(c)(2)(B) and the Preliminary Approval Order (ECF No. 34). Santacruz Decl. at ¶ 20. There have been no objections to the Settlement, and only 27 individuals have opted out. Joint Decl. at ¶ 37; Santacruz Decl. at ¶¶ 30, 31. To date, 67,783 claims have been submitted, representing a claims rate of more than 9%. Joint Decl. at ¶ 36; Santacruz Decl. at ¶ 28.

The lack of objections to the Settlement indicates that Settlement Class Members view the Settlement favorably, which weighs heavily in favor of final approval and further supports the "presumption of fairness." *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Wright,* 553 F.Supp.2d at 344–45 (approving settlement where 13 out of 3,500 class members objected and 3 opted out and noting "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness.). That there were no objections and a *de minimus* number of opt-outs is particularly noteworthy as "the notice and approval process generally solicits negative feedback regarding a settlement, because it is designed to solicit opt outs and objections by advising class members of procedures and deadlines for filing such responses with the court…in litigation involving a large class, such as that here, it would be extremely unusual not to encounter

---

[4] On December 12, 2023, Knix published a post on its Instagram account regarding the settlement, which received positive reactions from consumers. The post received approximately 86,400 impressions. A copy of the post is attached hereto as Exhibit 3.

objections." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 197 (S.D.N.Y. 2012). Consequently, the second *Grinnell* factor weighs in favor of final approval of the Settlement.

### c.  Discovery Has Advanced Far Enough to Allow the Parties to Responsibly Resolve the Case (*Grinnell* Factor 3)

Under this factor, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *See Torres v. Gristede's Operating Corp.,* 2010 WL 5507892, at *5 (S.D.N.Y. Dec. 21, 2010) (internal quotation omitted).

Plaintiffs' and Class Counsel's knowledge of the merits as well as the strengths and weaknesses of their claims is certainly adequate to support the Settlement. This knowledge is based, in part, on the extensive investigation undertaken by Class Counsel in preparing the initial complaint. Joint Decl. at ¶¶ 8-13. As a result of the extensive investigation, as well as Class Counsel's experience litigating similar actions involving the presence of PFAS in consumer goods, Plaintiffs and Class Counsel were in a position to intelligently weigh the strengths and weaknesses of their case and to engage in effective settlement discussions with Defendants. *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) ("Formal discovery is not a prerequisite; the question is whether the parties had adequate information about their claims."); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. at 177 (finding that even where "no merits discovery occurred in this case to date," lead counsel was "knowledgeable with respect to possible outcomes and risks in this matter and, thus, able to recommend the Settlement").

Indeed, prior to mediation, the parties exchanged significant information, which allowed the parties to assess the strengths of their positions and attack each other's potential weaknesses. Joint Decl. at ¶¶ 21-23. During mediation, the parties thoroughly discussed and vetted the facts and law, as Mr. Winters engaged in a critical analysis of the parties' arguments. *Id.* at ¶ 24. The parties continued to engage in settlement discussions, including the exchange of additional informal discovery, in the weeks and months following mediation. *Id.* at ¶. This discovery was

sufficient for Class Counsel to appreciate the merits of the case before both negotiating and recommending settlement. *See also deMunecas v. Bold Food, LLC*, No. 09 CIV. 00440 DAB, 2010 WL 3322580, at *5 (S.D.N.Y. Aug. 23, 2010) (finding third *Grinnell* factor weighed in favor of final approval where the plaintiffs obtained sufficient discovery through an efficient, informal exchange of information, followed by a mediation session which "allowed them to further explore the claims and defenses.")

Consequently, this *Grinnell* factor weighs in favor of final approval of the Settlement.

### d. The Continued Litigation Risks Related to Establishing Liability, Damages, and Maintaining a Class Action Through Trial Support the Settlement (*Grinnell* Factors 4, 5, and 6)

"The fourth, fifth, and sixth *Grinnell* factors all relate to continued litigation risks," *i.e.*, the risks of establishing liability, damages and maintaining the class action through trial. *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *5. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y.1997). One purpose of a settlement is to avoid the uncertainty of a trial on the merits. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 459. In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley*, 186 F. Supp. 2d at 364. The Court "must only 'weigh the likelihood of success by the plaintiff class against the relief offered by the settlement.'" *In re Austrian and German Bank Holocaust Litig.,* 80 F.Supp.2d at 177 (quoting *Marisol A. ex rel. Forbes v. Giuliani,* 185 F.R.D. 152, 164 (S.D.N.Y.1999)).

The fourth and fifth factors under *Grinnell* require the Court to consider the risks of establishing liability and damages. While Plaintiffs believe their claims would be borne out by the

evidence presented at trial, they recognize that there are significant hurdles to proving liability or even proceeding to trial. Joint Decl. at ¶ 38. Among other things, Defendants denies all allegations of liability and has strenuously contended that Plaintiffs would be unable to prove that Defendants made any false or misleading material statements. *Id*. Defendants have consistently challenged Plaintiffs' claims on several grounds, including with respect to the type, level, and amount of PFAS allegedly found through Plaintiffs' testing and the extent to which their alleged presence in the Knix Products poses any risk of harm. *Id.* These issues, which go to the merits of the case, would be central to Knix's defense, and potentially pose hurdles for Plaintiffs. *Id*.

Furthermore, Plaintiffs would have been forced to undertake a fact-intensive economic inquiry to show the damages claimed would compensate consumers for the value they would have received absent the alleged misrepresentations. *Id.* at ¶ 39. Defendants would have likely opposed the validity of Plaintiffs' damages model and its ability to be calculated with proof common to the class. *Id*. As with contested liability issues, issues relating to loss causation and damages would have likely come down to an unpredictable and hotly disputed "battle of the experts." *Id.* Plaintiffs' reliance on expert testimony to establish damages, as well as a jury's acceptance of that expert testimony is far from certain, especially when Defendants would offer competing expert testimony to the contrary. *See In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 426-27 (S.D.N.Y. 2001) ("Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Class Defendants, who could minimize or eliminate the amount of Plaintiffs' losses."); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744 (S.D.N.Y. 1985) ("In this 'battle of the experts' it is virtually impossible to predict with any certainty which testimony would be credited . . .").

The sixth *Grinnell* factor considers the risk of maintaining class status through trial. Although class certification has been preliminarily approved by this Court for the purpose of

settlement, it is not certain that the case would be certified in the absence of a settlement. If the Settlement was not granted final approval, Knix would certainly challenge class certification, and the risk that the case might be not certified is not illusory and weighs in favor of the Class Settlement. *See also deMunecas*, No. 09 CIV. 00440 DAB, 2010 WL 3322580, at *6 (finding settlement eliminated the risk, expense, and delay inherent in a contested class certification motion and therefore the sixth *Grinnell* factor was satisfied).

Without the Settlement, the parties faced the certainty that litigating this action through the completion of fact discovery, class certification, expert discovery, summary judgment, trial, and appeals, which would be complex, time-consuming, and expensive. Joint Decl. at ¶ 40. Here, the Settlement provides a substantial monetary benefit to Settlement Class Members without the risk and delays of continued litigation. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("…the passage of time would introduce yet more risks…and would, in light of the time value of money, make future recoveries less valuable than this current recovery.").

The Settlement avoids the risks inherent in protracted litigation and provides a prompt and favorable resolution to the Class. Accordingly, the fourth, fifth, and sixth *Grinnell* factors weigh in favor of final approval.

### e.  The Ability of Defendant to Withstand a Greater Judgment (*Grinnell* Factor 7)

The seventh *Grinnell* factor considers whether a defendant could withstand a judgment substantially higher than the proposed settlement amount if the case were to proceed to trial. *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 338 (S.D.N.Y. 2005). While Defendant is able to withstand a judgment in excess of the Settlement Amount, courts generally do not find this to be an impediment to settlement when the other factors favor the settlement. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *6 (acknowledging that "in any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and

. . . this fact alone does not undermine the reasonableness of the instant settlement").This factor is typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement. *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 314 (S.D.N.Y. 2020). In cases such as this one where that situation is not present, courts generally do not give much consideration to this factor.

### f. The Settlement Amount is Reasonable in Light of the Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank*, 228 F.R.D. at 186 (internal quotation marks omitted). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), *cert. denied*, 409 U.S. 1039 (1972)). Because a settlement provides certain and immediate recovery, courts often approve settlements even where the benefits obtained as a result of the settlement are less than those originally sought. As the Second Circuit stated in *Grinnell*, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth of a single percent of the potential recovery." 495 F.2d at 455 n.2.

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness"—a range which "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman*, 464 F.2d at 693; *see also Global Crossing*, 225 F.R.D. at 461 (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 WL 22244676, at *3-*4 (S.D.N.Y. Sept. 29, 2003) (noting few cases tried before a jury result in full amount of damages claimed). In addition, in considering the reasonableness of the Settlement, the Court should consider that the Settlement provides for payment to Settlement Class Members now, rather than the potential for a payment years down the road. *See In re Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (where settlement fund is in escrow earning interest, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery").

Given that the weighted average retail price of the products included in the Settlement is $21, that Settlement Class Members may receive 25% of the average purchase price with proof of purchase for up to 3 Knix Products is a very favorable recovery under any circumstances. Joint Decl. at ¶ 41. This percentage of recovery is well above the recovery range of settlements that have received approval within the Second Circuit and compares favorably to similar false advertising class actions. *See, e.g., Hesse v. Godiva*, Case No. 1:19-cv-00972-AJN (S.D.N.Y.) (ECF Nos. 81, 135) (approving settlement of false advertising claims which awarded class members cash reimbursement equivalent to 16% of average purchase price of product); *Belfiore v. The Procter*

& Gamble Company, No. 2:14CV04090 (E.D.N.Y.) (ECF Nos. 358-1, 361) (approving settlement of false advertising claims which awarded class members a maximum cash reimbursement equivalent to 26% of average purchase price of product); *Dickens, et al. v. Thinx, Inc.*, 1:22-cv-04286-JMF, Dkt. No. 57 (June 8, 2023, S.D.N.Y.) (ECF No. 57) (approving settlement of false advertising claims related to PFAS in menstrual underwear and awarding class members a cash reimbursement equivalent to 25% of average purchase price of product); *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 762 (2d Cir. 2020) (affirming district court's approval of settlement representing 6.1% of the class's maximum potentially recoverable damages).

Although Plaintiffs and Defendants disagree about the amount of maximum recoverable damages, the common fund of up to Two Million Dollars ($2,000,000), comprising a $1,400,000 Cash Minimum Amount and $600,000 Replenishment Amount, is a substantial recovery regardless of which party's damages metric is used. Here, Plaintiffs faced numerous legal, procedural, and practical hurdles, including issues related to materiality of the alleged non-conforming ingredients at issue, that, if not overcome, could preclude any recovery for Plaintiffs and the Settlement Class.

Accordingly, the final elements of the *Grinnell* test weigh heavily in favor of approval.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Final Approval of Class Action Settlement and enter the Final Approval Order in the form submitted herewith.

DATED:        March 25, 2024                    Respectfully submitted,

                                                */s/ Erin J. Ruben*
                                                Erin J. Ruben*
                                                **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
                                                900 W. Morgan Street
                                                Raleigh, NC 27603
                                                P.O. Box 12638
                                                Raleigh, NC 27605
                                                eruben@milberg.com

                                                Rachel Soffin*
                                                **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
                                                800 S. Gay Street, Suite 1100
                                                Knoxville, TN 37929
                                                rsoffin@milberg.com

                                                Harper T. Segui*
                                                **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
                                                825 Lowcountry Blvd., Suite 101
                                                Mt. Pleasant, SC 29464
                                                hsegui@milberg.com

                                                J. Hunter Bryson*
                                                **MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLP**
                                                405 E 50th Street
                                                New York, NY 10022
                                                Tel: (630) 796-0903
                                                hbryson@milberg.com

                                                ***Attorneys for Plaintiffs and the Class***

                                                *Admitted Pro Hac Vice*