

Erin J. Ruben
900 W. Morgan Street
Raleigh, NC 27603
(919) 600-5009
eruben@milberg.com

April 18, 2024

**Via ECF**
The Honorable Jennifer L. Rochon
Daniel Patrick Moynihan
United States Courthouse
Courtroom 20-B
500 Pearl Street
New York, NY 10007

> **Re:** ***Spencer et al. v. Knix Wear, Inc., et al.***
> Case No. 1:23-cv-07823

Dear Judge Rochon:

On April 15, 2024, this Honorable Court ordered Plaintiffs' counsel to file a letter brief detailing how Plaintiffs' counsel's billing, and therefore compensation, was not significantly duplicative of the work they performed in *Dickens v. Thinx, Inc.*, 22-CV-04286 (JMF)(S.D.N.Y.) ("*Thinx*"). ECF No. 45. Plaintiffs' counsel regrets their failure to explicitly address the Court's concerns in its prior briefing. Along with that apology, Plaintiffs' counsel submits the following response detailing separate billing and lack of duplication from the *Thinx* matter, in further support of Plaintiffs' Unopposed Motion for Attorneys' Fees, Reimbursement of Expenses and Service Awards (ECF Nos. 37-38).

On June 8, 2023, approximately three months before the present action was filed, Plaintiffs' counsel received final approval of the settlement in *Thinx*, along with an award of attorneys' fees. *See Thinx*, ECF No. 57. The *Thinx* case, like the *Knix* case, involved allegations of false advertising relating to the presence of PFAS in menstrual underwear. Given the similarities between the two cases, this Honorable Court expressed concern at the preliminary approval hearing that Plaintiffs' request for fees in this matter would be duplicative of those fees already awarded in the *Thinx* matter.

First, Plaintiffs' counsel has always maintained a billing and expense tracking system that logistically prevents duplicative billing, but for possible user error in selecting the wrong case to enter time or expenses.[1] Specifically, since the opening of the respective files (*Thinx* in September 2020 and *Knix* in September 2021), the two cases have always maintained separate billing files within each firms'[2] timekeeping systems to ensure that all of Plaintiffs' counsel's time and expenses was appropriately allocated to each case with no duplicative billing

---

[1] Plaintiffs' counsel has reviewed their time prior to submitting to the Court and have not discovered allocation of *Thinx* time to the *Knix* file.

[2] In late 2021, Whitfield Bryson, LLP, Greg Coleman Law, PC, Sanders Phillips Grossman LLC and Milberg Phillips Grossman LLP merged to form Milberg Coleman Bryson Phillips Grossman, LLC.

between the two. As shown in the billing records submitted separately under seal, the time entries in this matter are unique to the *Knix* case and begin nearly a year after the *Thinx* action was filed on November 20, 2020.

Although the two cases both involve PFAS and menstrual underwear, they involve different proprietary technology and manufacturing processes, different marketing and advertising, different affirmative misrepresentations, different theories of liability and different defenses, separate product testing, and separate pricing, all of which required independent analysis. Given the fact-intensive nature of Plaintiffs' claims, including different defense counsel and a different defendant, engaging in entirely separate settlement negotiations and different mediators, Plaintiffs' counsel expended significant effort particular to this case that was separate and apart from *Thinx*.

While Plaintiffs' counsel was able to benefit from certain work in the *Thinx* case (*e.g.,* expert discussions regarding PFAS in general), the *Knix* case posed unique issues that led to significant time specific to this case, including testing results specific to Knix products, how the PFAS was transferred to or manufactured with the Knix underwear, the size and nature of the class, the retail pricing of the products, the prevalence of representations on the Knix website and marketing materials, and many nuances in settlement negotiations. As discussed further below, the billing not only reflects work unique to the *Knix* case but also reflects the omission of time and expenses incurred in *Thinx*, including much of the expert groundwork that substantively benefited the *Knix* case substantively but the expense and time of which was not taxed to the Settlement Class.

More specifically, as outlined below, the substantive overlap between the two cases was limited to pre-suit investigation for which counsel does not seek reimbursement for time or expense. Plaintiffs' fee motion is based solely on work that was unique to *Knix* and reasonably necessary to achieve settlement.

### As Shown in the Billing Records, Plaintiffs' Counsel in the Knix Action Did Not Bill for Consulting Expert Work Which Was Billed in the Thinx Action in Order to Avoid Duplicative Billing

Plaintiffs' counsel first began investigating the presence of PFAS in menstrual underwear (including the Knix Products at issue in this case) in early 2020. As part of their investigation, Plaintiffs' counsel worked with a variety of consulting experts who provided their expertise regarding the use of PFAS in textiles, methods for detecting PFAS, and potential health consequences resulting from PFAS exposure. Plaintiffs' experts also conducted testing on certain varieties of Knix Products. This expert work took place primarily between February 2020 and May 2021, many months before counsel began actively litigating the *Knix* case in Februrary 2022.

The information received from consulting experts provided important foundational knowledge that allowed Plaintiffs' counsel to assess the strength of Plaintiffs' claims in the *Knix* action. While Plaintiffs and Class Members benefitted significantly from this expert work, Plaintiffs previously sought reimbursement for this time in the *Thinx* matter and accordingly, Plaintiffs' counsel has not billed for any of that time in this case. All of the work that was done in the *Knix* case was independent from counsel's efforts in *Thinx*.

### The Facts Differed Significantly Between the Thinx and Knix Cases

While the products at issue in the cases are similar, the facts of the two cases are markedly different. This is most apparent when comparing the two complaints, which share minimal overlap. A redline comparison of the two pleadings is attached here as **Exhibit A**. This is clearly not a case of "copy and paste" litigation.

Knix utilized unique marketing and branding which had to be carefully analyzed prior to filing a complaint. Plaintiffs' counsel spent extensive time reviewing the history of Knix's brand and all publicly available marketing and advertising prior to drafting the complaint. Likewise, Plaintiffs' counsel spent time investigating the unique claims of Plaintiffs in this action, including engaging in telephone interviews and reviewing relevant documents.

Although counsel's prior understanding of the science of PFAS was undoubtedly helpful, Plaintiffs' counsel still expended numerous hours in developing the individual facts of this case, which diverged significantly from *Thinx*. As further detailed below, the settlement negotiations (which comprise the majority of time expended in this case) were also unique to the two cases.

**Settlement Negotiations Were Extensive and Necessary, and Entirely Distinct from Negotiations in Thinx, including: (a) a Different Defendant, (b) Different Defense Counsel, (c) a Different Mediator and (d) a Different Claims Administrator.**

Although the Parties reached an "early" settlement, it is still the result of extensive, hard-fought negotiations over a period of more than a year. Knix was represented by highly-skilled and meticulous counsel who advocated fiercely for their client's interests at every juncture. This is apparent in the billing records, which detail countless telephone calls, video conferences, and email communications between the Parties discussing the finer points of the settlement and the many revisions exchanged between the Parties during these extended negotiations.

While Plaintiffs' counsel learned from the settlement experiences in *Thinx*, the *Knix* case posed unique issues that led to the billing detailed in the records provided to the Court. For example, Knix is a separate company from Thinx, with different defense counsel, separate decision makers, and overall different corporate preferences, which made the settlement negotiations entirely distinct. In addition, the Parties negotiated the settlement with the assistance of a different mediator than in *Thinx*, and utilized a different claims administrator, which required independent time with the mediator and claims administrator in the *Knix* case. For example, the injunctive relief in the two cases differed significantly, with the *Knix* case providing for increased product testing, which was not part of the *Thinx* settlement and which took substantial time to negotiate. Likewise, the Parties developed a different notice plan than *Thinx*, including a targeted media plan that would reach a different set of purchasers than in the *Thinx* case, requiring multiple meetings with the claims administrator.

The Parties worked methodically over a period of many months to ensure that the pleadings, settlement papers, and notice documents would not only reach *Knix* customers, but also be easily understood by Settlement Class Members as relating *only* to the marketing statements at issue in this case, which were specific to Knix. This required painstaking negotiations regarding the precise language used to describe the settlement terms, including assurances to Class Members that they were not releasing any personal injury claims. This was particularly important given the concerns of *Thinx* Settlement Class Members raised during the claims administration process in public domains, which allowed the parties in the *Knix* litigation to further address these issues in advance of finalizing the settlement agreement and claims administration. Knix's counsel advocated strongly for its position and the Parties spent substantial time negotiating the language which would be used to describe the conduct alleged by Plaintiffs, in addition to discussing and addressing the concerns of Defendants in ensuring that the settlement and claims process were unique to Knix and did not overlap with *Thinx*.

The billing records, which are being submitted *in camera* will also show additional work and time spent to ensure the settlement was fair, reasonable and adequate, and in the best interest of the Class.

Balancing all of these concerns required exhaustive communications between the Parties, along with painstaking edits to the settlement documents, which is demonstrated in the billing records. These efforts were exclusive to *Knix* and did not overlap with any of the billing in *Thinx*.

Although settlement negotiations in this case were time consuming, challenging, and frequently frustrating, they were not excessive in achieving the resulting settlement. Plaintiffs' counsel believes that the settlement, which provides substantial monetary relief for class members and non-monetary relief, will positively impact not only class members, but consumers and the menstrual product industry at large.

Very truly yours,

Erin J. Ruben

cc :
Lauren S. Colton, Esq. (via e-mail lauren.colton@hoganlovells.com)
Marc Marinaccio, Esq. (via e-mail marc.marinaccio@hoganlovells.com)
Pieter H.B. Van Tol , III, Esq. (via e-mail pieter.vantol@hoganlovells.com)
Katherine Marguerite Lieb, Esq. (via e-mail klieb@sillscummis.com)
William Robert Tellado, Esq. (via e-mail wtellado@sillscummis.com)